LOMBARD, J.
RELEVANT FACTS AND PROCEDURAL HISTORY
E.O., mother of R.M.O. and W.M.O., has received services from the Department of Social Services Office of Community Services (“DSS/OCS”) since 1993. W.M.O., twelve years old, and R.M.O., ten years old, entered foster care on August 19, 1999, and have remained in foster care ever since. Their thirteen-year-old brother, S.M.O., entered foster care with them, but is not part of this proceeding. On October 7, 1999, they were adjudicated to be “children in need of care” and the court approved a case plan for the safe return of the children to their family.
W.M.O. has been diagnosed with pervasive development disorder, disruptive behavior disorder, post-traumatic stress syndrome, and moderate mental retardation. A neighbor sexually abused W.M.O. when he lived with his mother, and W.M.O. sexually abused R.M.O. when they were placed together in foster care. R.M.O. has been diagnosed with bipolar disorder, attention deficit disorder, and nocturnal enuresis, having experienced previous neglect and sexual abuse. Some of these illnesses are lifelong conditions, but all are treatable with [^medication and therapy. The boys require continuous, direct supervision and support by an adult at all times.
Reunification of W.M.O. and R.M.O. with E.O. was attempted by starting with over-night visitation. During the reunification, the children were exposed to sexually inappropriate behavior by the mother and domestic violence between the mother and her boyfriend.
On September 29, 2004, the Orleans Parish Juvenile Court ruled that the State, through the Department of Social Services, Office of Community Services (“DSS/OCS”), proved the elements for a termination of parental rights required by Children’s Code Art. 1015 and proved that the children cannot be returned to the mother. The juvenile court also found that there was proof of grounds to terminate the father’s parental rights. The court found that, while the State proved the grounds for the termination of parental rights, the State did not prove that termination was in the children’s best interest.
The State filed an appeal as to the denial of the termination based on the best interest issue only. The mother, E.O., has appealed the finding that the grounds for termination were proven. The father did not appeal.
LAW AND DISCUSSION
An appellate court cannot set aside a juvenile court’s findings of fact in the absence of manifest error or unless those findings are clearly wrong. In re A.J.F., 00-0948, p. 25 (La.6/30/00), 764 So.2d 47, 61.
LSA-Ch.C. art. 1015 provides the grounds for which parental rights may be terminated. LSA-Ch.C. art. 1015(5) provides:
Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent’s custody pursuant to a |3court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant im *1167 provement in the parent’s condition or conduct in the near future, considering the child’s age and his need for a safe, stable, and permanent home.
In this case, it is undisputed that more than one year has elapsed since R.M.O. and W.M.O. were removed from E.O.’s custody pursuant to a court order. The record reveals that the children were placed in foster care on August 19, 1999, and DSS/OCS filed its petition to terminate the parents’ parental rights on May 25, 2004. The State contends that it has met its burden of proving that E.O. has not substantially complied with the case plan, and there is no reasonable expectation of improvement of E.O.’s condition and/or conduct.
In order to terminate rights, the court must find that the State has established at least one of the statutory grounds contained in LSA-Ch.C. art. 1015 by clear and convincing evidence. State in the Interest of J.A., 99-2905, p. 8 (La. 1/12/00), 752 So.2d 806, 811. Further, even upon finding that the State has met its eviden-tiary burden, a court still should not terminate parental rights unless it determines that to do so is in the child’s best interest. LSA-Ch.C. art. 1037(A); State in the Interest of C.J.K., 00-2375, p. 8 (La.11/28/00), 774 So.2d 107, 113.
LSA-Ch.C. art. 1036(C) enumerates the substantive elements proving lack of substantial compliance with a court-approved case plan. This prong may be evidenced by one or more of the following:
|4(1) The parent’s failure to attend court-approved scheduled visitations with the child.
(2) The parent’s failure to communicate with the child.
(3) The parent’s failure to keep the department apprised of the parent’s whereabouts and significant changes affecting the parent’s ability to comply with the case plan for services.
(4) The parent’s failure to contribute to the costs of the child’s foster care, if ordered to do so by the court when approving the case plan.
(5) The parent’s repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.
(6) The parent’s lack of substantial improvement in redressing the problems preventing reunification.
Likewise, the substantive elements proving lack of a reasonable expectation of significant improvement in the near future are set forth in LSA-Ch.C. art. 1036(D), which provides that this prong may be shown by one or more of the following:
(1) Any physical or mental illness, mental deficiency, substance abuse or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.
(2) A pattern of repeated incarceration of the parent that has rendered the parent unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time.
(3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.
The primary concern of the courts and the State remains to determine and ensure the best interest of the child, which includes termination of parental rights if justifiable statutory grounds exist and are proven by the State. State in the Interest *1168 of S.M.W., 00-3277, p. 21 (La.2/21/01), 781 So.2d 1223, 1238.
Applying the aforementioned law to this case, we must determine (1) whether the State has established the grounds for termination set forth in LSA-Ch.C. art. 1015(5) by clear and convincing evidence; and, (2) whether, it is in |BR.M.O.’s and W.M.O.’s best interest to terminate E.O.’s parental rights.
Under E.O.’s case plan, she was to have evaluations, complete parenting classes, go to therapy, and participate in the children’s therapy. E.O. completed parenting classes and enrolled in advanced parenting, but did not complete the advanced class. Although she had no posi-' tive drug screens, she did not complete substance abuse treatment. She attended some, but not all, of the children’s therapy. E.O. did not pay child support as ordered and did not attend meetings with DSS/ OCS to plan for the children. She maintained relationships with violent men and did not keep sexual boundaries clear.
The evidence is clear that E.O. completed parts of the plan, but she has not demonstrated, despite five years of assistance, a change in parental behavior. Based on our review of the record, we conclude that the State has satisfied its burden of proving that E.O. has not substantially complied with the case plan to provide a stable environment for her children, and there is no reasonable expectation of improvement in her conduct.
At trial, the issue of the best interest of the’ children was presented to every expert witness. None of the experts agreed as to the permanency plans for the children. The experts and the -court did agree that R.M.O. and W.M.O. could not presently return to their mother, and they did not foresee where they could be returned to her at any time in the near future.
LSA-Ch.C. article 603(15) provides that permanent placement means the return of the legal custody of a child to his parent(s); placement of the child with adoptive parents pursuant to a final decree of adoption; or placement of the child with a legal guardian. LSA-Ch.C. article 1003(11) defines permanent placement as either placement of the child with a legal guardian or placement of the child ¡¿with adoptive parents, pursuant to a final decree of adoption. Thus, permanent placement does not include leaving children permanently in foster care. The primary goal is to reunite the family. However, if reunification is not possible, termination is appropriate to free the child or children for adoption. State in the Interest of J.M., 02-2089, p. 16 (La.1/28/03), 837 So.2d 1247, 1257.
Despite her efforts, it is clear that E.O. is incapable of meeting the special needs of her children. Accordingly, we conclude that the evidence clearly and convincingly reveals that it is in the best interest of R.M.O. and W.M.O. to terminate E.O.’s parental rights. The trial court erred in not doing so. Therefore, the trial court’s decision is hereby reversed, and E.O.’s parental rights are terminated.
REVERSED.
TOBIAS, J., concurs in the result in part, dissents in part, and assigns reasons.